Anthony J. SCHERER, Jr., Plaintiff,

v.

Thomas BRENNAN and Nick Noack, Defendants.

No. 66 C 846.

United States District Court
N. D. Illinois, E. D.

Sept. 22, 1966.

Sherwin & Sherwin, Chicago, Ill., for plaintiff.

Edward V. Hanrahan, U. S. Atty., for the Northern District of Illinois, Chicago, Ill., for defendants.

PERRY, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW.

This cause coming on to be heard on the motion of defendants under Rule 56 of the Federal Rules of Civil Procedure for summary judgment to be awarded in their favor and against plaintiff and the court having considered the motion, together with the supporting affidavits and having examined the briefs filed in support of and in opposition to said motion, does enter the following Findings of Fact and Conclusions of Law.

### Findings of Fact.

1. Suit was originally brought by plaintiff against defendants in the Circuit Court of Cook County, Illinois, seeking damages of $100,000 against each defendant. It was removed to this Court on Petition of defendants. No motion was made by plaintiff to remand the case to the state court. Defendants answered the complaint and moved for summary judgment on their behalf, filing affidavits in support of their motion. Defendants denied in their Answer all facts alleged in the complaint concerning the occurrences complained of except those facts stated in their affidavits filed in support of their motion. No counter-affidavits were filed by plaintiff. Plaintiff did file a Reply to Defendants' Answer.

2. Plaintiff has complained of occurrences on October 7, 1964, in and near his home at 3010 Orchard Place in Des Plaines. On that date, plaintiff was a duly licensed dealer under the National Firearms Act and the Federal Firearms Act. At and near his home, which was located within 300 yards of the O'Hare Inn, plaintiff possessed many rifles, pistols, a machine gun, a 25 m.m. cannon that could penetrate a concrete wall, and ammunition for those weapons. His home was within easy rifle shot of the O'Hare Inn. Several years before the date in question, plaintiff had been arrested by Chicago Police while in possession of a 20 m.m. cannon at O'Hare Airport.

3. On October 7, 1964, Michael W. Torina was Special Agent-in-Charge of the Chicago Office of the United States Secret Service, Treasury Department. As part of his duties he was assigned to protect the person of the President of the United States. He was authorized and directed by the Secretary of the

Treasury Department to call upon other agencies of the Treasury Department for assistance in carrying out protective assignments. On that date, the President of the United States was scheduled to arrive in the evening at the O'Hare Inn, which was the O'Hare Inn within 300 yards of plaintiff's residence. Mr. Torina therefore called Cecil M. Wolfe, Acting Chief of the Enforcement Branch, Alcohol and Tobacco Tax, Internal Revenue Service, Treasury Department, Midwest Region, at Chicago, Illinois. Mr. Torina asked Mr. Wolfe to supply the assistance of his investigators to keep under surveillance the occupant or occupants of the plaintiff's home, until the President departed.

4. After Mr. Wolfe received that request from Mr. Torina; he instructed defendants, who were Special Investigators of the Alcohol and Tobacco Unit in Chicago, and other investigators in that Unit, to assist Mr. Torina in the protection of the President and particularly to keep under surveillance the occupant or occupants of the plaintiff's home at 3010 Orchard Place in DesPlaines.

5. That same day, defendants identifying themselves and their purpose to plaintiff, made repeated attempts to persuade Mr. Scherer to separate himself from his weapons until the President left. These efforts included offers to provide a room for plaintiff at a nearby motel without cost to him, and, when that was refused, the request that he willingly give up his weapons until the President left. The latter request also being refused, the defendants and other Government agents on the same assignment attempted to keep plaintiff under constant direct surveillance, accompanying him when he left and later returned to his home. At no time did defendant prevent plaintiff from entering his home or using his property freely. They did tell him they wanted to follow him inside when he entered his home. However, when Mr. Scherer finally went inside and locked himself in, neither defendants nor any other Government agent attempted to enter. Defendants thereafter maintained surveillance from the outside of plaintiff's home until relieved by other agents.

6. Plaintiff was not at any time deprived of his liberty, or the use of his home, or his privacy within his home, or any of his many weapons or any ammunition or any other property. No property whatsoever was taken even temporarily.

7. The defendants, and each of them, were under assignment to protect the person of the President of the United States. At all times complained of, they were acting within the scope of their duties and within the outer perimeter of their line of duty. Their acts with respect to plaintiff and plaintiff's home and all acts committed by them were at all times reasonable, necessary, and within the scope of their assignment to protect the President of the United States.

### Conclusions of Law.

1. This action was properly removed from the Circuit Court of Cook County and this court has jurisdiction over the parties hereto and subject matter hereof. Title 28, United States Code, Sections 1442 and 1446.

2. Under Rule 56(e) of the Federal Rules of Civil Procedure, Title 28, United States Code,

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

No counter-affidavits were filed by plaintiff. The Answer of defendants specifically denied all facts alleged in the complaint concerning the events complained of except those facts stated in the affidavits filed by them in support of their Motion for Summary Judgment.

Accordingly, the facts to be considered by the court are those set forth in the affidavits filed by defendants in support of their Motion for Summary Judgment which was made pursuant to Rule 56 of the Federal Rules of Civil Procedure.

■ 3. A federal official, whether of high or of low rank, cannot be held personally liable in damages for an act committed within the general scope of his official authority and in pursuance of his official duties. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959); Sauber v. Gliedman, 283 F.2d 941 (7th Cir. 1960), cert. denied 366 U.S. 906, 81 S.Ct. 1047, 6 L.Ed.2d 204 (1961). This longstanding rule, often referred to as the "official immunity doctrine," has been consistently adhered to by the Supreme Court, Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L. Ed. 780 (1896); Alzua v. Johnson, 231 U.S. 106, 34 S.Ct. 27, 58 L.Ed. 142 (1913); Barr v. Matteo, supra; Howard v. Lyons, supra, and by the lower federal courts. See, e. g., Norton v. McShane, 332 F.2d 855 (5th Cir. 1964); Chafin v. Pratt, 358 F.2d 349 (5th Cir. 1966); Papagianakis v. The Samos, 186 F.2d 257 (4th Cir. 1950), cert. denied 341 U.S. 921, 71 S.Ct. 741, 95 L.Ed. 1354 and citations therein. It was adhered to by the Seventh Circuit Court of Appeals as recently as in LeBurkien v. Notti, 365 F.2d 143 (decided August 17, 1966).

■ 4. The principal reason for the official immunity doctrine, as was stated by the Supreme Court in Barr v. Matteo, supra, 360 U.S. at 571, 79 S.Ct. at 1339, is to leave government officials "free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties— suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government."

Judge Learned Hand also explained the rationale for the rule in Gregoire v. Biddle, 177 F.2d 579, 581 (2nd Cir. 1949) which was adopted with approval by the Supreme Court in Barr v. Matteo.

■ 5. The only prerequisite for the application of the immunity doctrine is that the action taken must be within the outer perimeter of the executive officer's line of duty. Barr v. Matteo, supra, 360 U.S. at 575, 79 S.Ct. 1335. This means that the "act must have more or less connection with the general matters committed by law to the officer's control or supervision, and not be manifestly or palpably beyond his authority." Norton v. McShane, supra, 332 F.2d at 859. Thus, the only issue for the court to determine is whether or not defendants were acting within the outer perimeter of the scope of their duties.

6. The affidavits filed on behalf of defendants clearly show that they did act within their authority and within the scope of their duties. Under the law, "Subject to the direction of the Secretary of the Treasury, the United States Secret Service, Treasury Department, is authorized to protect the person of the President of the United States * * *" Title 18, United States Code, Section 3056. The defendants were lawfully detailed to the Secret Service to assist it in carrying out the statutory duty "to protect the person of the President."

■ 7. The defendants' assignment in protecting "the person of the President", was to keep the plaintiff under surveillance, until the President departed from the area. In carrying out this assignment, the acts which occurred, as the affidavits show, were within the scope of the duties of defendants. Therefore, this action is barred under the official immunity doctrine.

8. Accordingly, it is the opinion of this court that the motion of defendants for summary judgment should be allowed and judgment should be entered against plaintiff and in favor of defendants.