### UNITED STATES ex rel. Kenneth FISHER, Plaintiff/Relator,

v.

### NETWORK SOFTWARE ASSOCIATES, INC., et al., Defendants.

### Civil Action No. 99–3095(PLF).

United States District Court, District of Columbia.

Jan. 14, 2002.

Alan Mark Grayson, Ira Eliot Hoffman, Victor Aronoff Kubli, Grayson & Kubli, P.C., McLean, VA, for Plaintiff.

Robert Elijah Jordan, III, Thomas M. Barba, Steptoe & Johnson, L.L.P., Washington, DC, Timothy Edward Heffernan, Watt, Tieder, Hoffar & Fitzgerald, L.L.P., McLean, VA, Brian Denton West, Sandground, Barondess & West, P.C., Vienna, VA, Aaron L. Handleman, Eccleston & Wolf, Washington, DC, for Defendants.

## *MEMORANDUM OPINION*

PAUL L. FRIEDMAN, District Judge.

This matter came before the Court on the motion of all defendants to dismiss Counts 1, 2 and 3 of the first amended complaint on statute of limitations grounds, the motion of defendants Network Software Associates, Inc., a Virginia corporation ("Network Virginia"), Ivan Socher and Raoul Socher to dismiss Count 4, and the separate motion of Network Virginia to dismiss the first amended complaint for failure to state a claim upon which relief can be granted against it. On December 3, 2001, the parties appeared before the Court for a motions hearing. At the conclusion of the hearing, the Court ruled orally, granting the motion to dismiss Count 4 and granting in part the

motion to dismiss Counts 1 and 2. The two remaining issues to be decided are: (1) whether the six-year statute of limitations of the False Claims Act bars the conspiracy claim alleged in Count 3, and (2) whether Network Virginia is a proper defendant under the federal law of successor liability.

### A. Conspiracy Under 31 U.S.C. § 3729(a)(3)

■ With respect to Counts 1 and 2 of the amended complaint, the Court ruled at the conclusion of the motions hearing that the six-year limitations period of 31 U.S.C. § 3731(b)(1) is applicable. The Court agreed with Judge Flannery's analysis in *United States ex rel. El Amin v. George Washington University,* 26 F.Supp.2d 162, 170–73 (D.D.C.1998), that the six-year limitations period applies in *qui tam* actions when the United States decides not to intervene. The statutory language and legislative history support the conclusion that Section 3731(b)(2), with its three-year tolling provision and 10–year limitations period, applies only to the government and not to a *qui tam* relator. Accordingly, since the original complaint in this case was filed on November 22, 1999, the Court announced at the hearing that it will dismiss all purported violations of 31 U.S.C. § 3729(a)(1) (Count 1) and all purported violations of 31 U.S.C. § 3729(a)(2) (Count 2) that pre-date November 22, 1993.

With respect to Count 3, the Court held that the six-year limitations period was applicable but did not decide whether some, all or none of the allegations raised under this count should be dismissed. Defendants argue that the heart of the conspiracy claim is the Small Business Administration Section 8(a) certification which was applied for and obtained in 1987, well outside of the six-year limitations period. They maintain that the entire conspiracy claim therefore must be dismissed. De-

fendants rely on Judge Robertson's decision in *United States v. Vanoosterhout,* 898 F.Supp. 25 (D.D.C.1995), *aff'd,* 96 F.3d 1491 (D.C.Cir.1996), in which he dismissed a Section 3729(a)(3) False Claims Act conspiracy on the ground that the false claim giving rise to liability occurred more than six years prior to the filing of the complaint and therefore was time-barred. Defendants contend that Judge Robertson's opinion stands for the proposition that the entire conspiracy claim must be dismissed when the act central to the conspiracy occurs more than six years before the complaint was filed.

■ Defendants misread *Vanoosterhout.* In that case, Judge Robertson dismissed the action because the *only* purported violation of the False Claims Act ("FCA") was time-barred and not because the central act of the conspiracy fell outside of the limitations period. *See United States v. Vanoosterhout,* 898 F.Supp. at 28–29. Assuming that the application for the Section 8(a) certification is the central event in this case, relator has pointed to other acts allegedly constituting violations of the FCA in furtherance of the conspiracy that occurred within the six-year limitations period, some as recently as 1997— such as contracts awarded to defendants and paperwork completed to maintain the defendants' Section 8(a) status. Because relator has alleged a conspiracy with overt acts in support of it that occurred within the six-year period, the conspiracy claim should not be dismissed just because the Section 8(a) certification itself occurred more than six years prior to the filing of the complaint.

■ The parties also disagree over when the statute of limitations begins to run for an FCA conspiracy claim. Defendants argue that in civil conspiracies, the statute of limitations begins to run when the first overt act in furtherance of the

conspiracy occurs—in this case the Section 8(a) certification in 1987; in their view, therefore, suit had to be filed by 1993. Relator argues that the limitations period should run from the date of the last overt act in furtherance of the conspiracy. In his view, if any one overt act occurred after November 23, 1993, the conspiracy claim lies and all overt acts, including those that occurred prior to that date, are relevant as part of the conspiracy on a continuing violation theory, a theory which relator attempts to import from employment discrimination case law. Both of these positions appear to conflict with the prevailing law in this circuit that "the statute of limitations in a civil damages action for conspiracy runs separately from each overt act that is alleged to cause damage...." *Lawrence v. Acree,* 665 F.2d 1319, 1324 & n. 7 (D.C.Cir.1981); *see Thomas v. News World Communications,* 681 F.Supp. 55, 73 (D.D.C.1988); *see also Scherer v. Balkema,* 840 F.2d 437, 439–40 (7th Cir.1988). Under this rule, relator may attempt to prove the underlying conspiratorial agreement through those overt acts that occurred after November 22, 1993, but not those that occurred before that date; if successful, he may recover damages for all violations committed as a part of the conspiracy from that date forward. Thus, the statute of limitations bars recovery for some but not all of the acts committed as a part of the conspiracy alleged in Count 3.

### B. Successor Liability

In its separate motion to dismiss, Network Virginia contends that as the purchaser of the assets of Network Federal, it does not incur the liability of the predecessor entity. The law of successor liability was set forth by Chief Judge Posner in *EEOC v. G–K–G, Inc.,* 39 F.3d 740 (7th Cir.1994), as follows:

The purchaser of the assets, as distinct from the stock, of a corporation generally does not acquire the seller's liabilities, even if all the assets are transferred by the sale so that in effect the entire business has been sold, and the purchaser intends to continue it as a going concern.... Only if the sale is merely a step in a corporate reorganization designed to shift the liabilities to an empty shell will the creditors be allowed to go against the "purchaser." ...

Nevertheless, when a claim arising from a violation of federal rights is involved, the courts allow the plaintiff to go against the purchaser of the violator's business even if it is a true sale and not a reorganization, provided that two conditions are satisfied. The first is that the successor had notice of the claim before the acquisition.... The second condition is that there be substantial continuity in the operation of the business before and after the sale, and is satisfied if no major changes are made in that operation.

*Id.* at 747–48. Because Network Virginia was incorporated in June 1997, and the last false claim and last overt act in furtherance of the conspiracy alleged by the relator occurred by February 1997, it can only be liable for violations of the FCA if the two conditions articulated by Judge Posner are satisfied.

Network Virginia argues that successor liability applies only if it had notice of relator's claims when it acquired the assets of Network Federal. It contends that no such notice could have been possible when Network Virginia purchased Network Federal's assets in 1997 because all of the allegedly illegal acts in the amended complaint predate the creation of Network Federal and because the original complaint was not filed by Mr. Fisher until November 22, 1999 and remained under seal until

January 18, 2001. Furthermore, even if relator is correct that the Justice Department contacted two former Network Federal employees about these allegations, such contact did not take place until late 2000. *See* Amended Complaint ¶ 196.

 Defendant construes the requirement that it "had notice of the claim before the acquisition" too narrowly. Substantial continuity in ownership and staff between the predecessor corporation and the successor entity "may well satisfy the notice prong" by suggesting that there was actual knowledge of a claim by the successor corporation or its principals. *Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49–50 (7th Cir.1995); *see also Maccora, Peoples & Lam v. Malone*, Civ. No. 95–20366, 1996 WL 350808, at *2 (N.D.Cal. June 20, 1996) (where owner and CEO of company administered pension plan both before and after sale and was aware that there could be problems with the plan, "knowledge of potential liability satisfies the notice requirement"). In this case, even though the alleged FCA violations predated the creation of Network Virginia and the initiation of this litigation postdates the acquisition of the assets of Network Federal, relator argues that Ivan Socher's control over both entities put him (and hence Network Virginia) on notice of potential liability under the FCA. Relator alleges that Ivan Socher devised the scheme to obtain the Section 8(a) certification and then incorporated Network Virginia and used that corporation to purchase the assets of Network Federal as a way of obtaining the benefits of the illegal Section 8(a) certification. If relator is able to prove these facts, he might be able to demonstrate that Network Virginia had sufficient notice of Network Federal's potential FCA liability. Because these factual assertions must be accepted as true for purposes of the motion to dismiss, the Court cannot conclude as a matter of law that Network Virginia did not have notice of these potential FCA claims. It therefore denies Network Virginia's motion to dismiss.

The Court will issue an Order consistent with this Memorandum Opinion this same day.

SO ORDERED.

### ORDER

Upon consideration of the arguments of the parties set forth in their briefs and at the motions hearing before the Court on December 3, 2001, and for the reasons stated by the Court at the hearing and in the Memorandum Opinion issued this same day, it is hereby

ORDERED that the motion to dismiss Counts 1, 2 and 3 of the first amended complaint on statute of limitations grounds [20–1] is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that the motion to dismiss Count 4 for failure to state a claim upon which relief may be granted [19–1] is GRANTED; it is

FURTHER ORDERED that the motion to dismiss Network Virginia from the suit [21–1] is DENIED;

FURTHER ORDERED that with respect to Counts 1, 2 and 3, all acts occurring prior to November 23, 1993 are barred by the statute of limitations; it is

FURTHER ORDERED that on or before January 31, 2002, relator shall file a second amended complaint stating with specificity those acts constituting violations of the False Claims Act or overt acts in furtherance of the alleged conspiracy to commit violations of the False Claims Act that occurred after November 23, 1993; and it is

FURTHER ORDERED that on or before January 31, 2002, relator may file a motion for leave to file a third amended complaint with respect to the dismissed retaliation claim. If such a motion is filed, defendants shall file an opposition(s) by February 13, 2002. Relator shall file a reply, if necessary, by February 22, 2002.

SO ORDERED.